UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) PATSY FINK,  )<br>  )<br>     Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>(2) STATE OF OKLAHOMA, ex rel.  )<br>    THE DEPARTMENT OF HUMAN  )<br>    SERVICES,  )<br>(3) JUSTIN BROWN, in his capacity as  )<br>    Director of the Department of  )<br>    Human Services  )<br>(4) MORGAN RUSH, both Individually  )<br>    and in her capacity as a DHS  )<br>    Employee  )<br>(5) CHERRIE WHEELER, both  )<br>    Individually and in her capacity as a  )<br>    DHS Employee  )<br>(6) WHITNEY JONES, both  )<br>    Individually and in her capacity as a  )<br>    DHS Employee  )<br>(7) JENNY DECKARD, both  )<br>    Individually and in her capacity as a  )<br>    DHS Employee  )<br>(8) KATIE SMITH, both Individually  )<br>    and in her capacity as a DHS  )<br>    Employee  )<br>(9) PERCILLA FORSITHE, both  )<br>    Individually and in her capacity as a  )<br>    DHS Employee  )<br>(10) OTHER YET TO BE NAMED DHS  )<br>     EMPLOYEES.  )<br>  )<br>     Defendants.  | Case No. 21-CV-189-CVE-JFJ<br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** |

## COMPLAINT

COMES NOW Plaintiff, Patsy Fink, by and through her attorney of record, John M. Dunn, and for her complaint against the Defendant, avers and states as follows:

## **PARTIES**

1. This is an action for violation of various civil rights, denial of due process, along with claims arising under state law against the Defendants.

2. Patsy Fink is a natural person and at all times relevant has been a resident of Tulsa County, located in the Northern District of Oklahoma.

3. The Oklahoma Department of Human Services ("DHS") is a department and sub-division of the State of Oklahoma. It is lead by its director, Justin Brown.

4. On information and belief, DHS employs certain individuals acting in concert and with a common intent to violate Plaintiff's civil rights. These persons are Morgan Rush, Cherrie Wheeler, Whitney Jones, Jenny Deckard, Katie Smith, Percilla Forsithe, and others yet to be identified.

5. Mark Dungan ("Dungan") is a natural person and is related by marriage to Plaintiff.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction because among the federal claims raised are civil rights violations for which relief under 42 U.S.C. § 1983 is sought.

7. This action also involves State action in Indian Country contrary to 10 O.S. § 403(A)(16).

8. Venue is proper in this judicial district under 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this judicial district.

9. This Court has personal jurisdiction over the Defendant DHS as it is a subpart of a political subdivision of the United States.

## FACTS COMMON TO EACH CLAIM

10. Prior to July 31, 2020, Plaintiff operated a daycare at her residence, located at 1813 East Jacksonville Street in Broken Arrow, OK. This address is located within the Northern District of Oklahoma and on the (Muscogee) Creek Indian Reservation[1].

---

[1] On July 9, 2020, the United States Supreme Court decided the Case of *McGirt v. Oklahoma,* 591 US ____ (2020). As a part of that decision, the Court determined that the Creek Nation was not disestablished and remains a reservation to this day.

11. In June of 2020, Dungan came under investigation as a result of claims arising out of a disclosure of one of his foster children. As a result of the allegations, Dungan was forced to vacate his residence, and took up temporary residence with Plaintiff.

12. Despite months of investigation - the execution of search warrants, the search of telephonic and other computer devices, DHS never made a finding concerning Dungan, and he has never been arrested on any charge arising from these reports.

13. Despite months of investigation, DHS has failed to uncover a single shred of evidence that would support any allegation of wrongdoing.

14. On or about July 31, 2020, DHS worker Morgan Rush came to Plaintiff's residence/daycare at 9:02 PM to discuss "the daycare". Specifically, she wanted to discuss Plaintiff's knowledge of Dungan and the allegations that had been made against him by his foster child that was in no way related to the daycare.

15. Rush asked questions concerning whether Plaintiff believed the allegations or how she would react if it were to be "found to be true" that he had committed the acts which had been reported.

16. Plaintiff confirmed that Dungan was staying at her residence on a temporary basis until the investigation was resolved (which appears to be required within 30 days per OAG 340:75-3-510(a)). Rush was also advised that Dungan was only present when the facility was closed and no children were present.

17. After initially accepting this explanation and departing the residence, Rush quickly returned and told Plaintiff that, after consulting with her supervisor, this arrangement was not acceptable. Rush indicated that it was against DHS policy for Dungan to be present in the facility. However, this statement is not accurate. In truth, the daycare was required to notify the State the next business day following Dungan moving in.

18. Rush informed Plaintiff that "[a]ny child that was around [Dungan] was in imminent danger." This statement was made despite having no actual evidence against Dungan.

19. Plaintiff was told that the presence of Dungan would result in the State "shutting her down".

20. On or about August 1, 2020, at 3:30 PM, Cherie Wheeler and child welfare specialist Whitney Jones arrived at Plaintiff's home/daycare facility. They alleged that they were investigating a complaint about Dungan being present at the facility.

21. In fact, Dungan was not there because the facility was in operation an there were children present.

22. They issued a violation notice to Plaintiff alleging that she had failed to notify the State that Dungan had "moved in" to the facility within 24 hours. They demanded that she voluntarily close. Plaintiff refused.

23. The case worker continued to argue with Plaintiff and told her "*[w]e* are considering this to be substantiated because *we believe* it happened." and "[i]f you knew what the allegations were, you wouldn't let him live here."

24. Wheeler and Jones demanded, and were provided with, a roster of children and their parents' phone numbers.

25. Unknown DHS workers then began contacting each of the parents on the list and advising that there was reason to believe that their children had been victims of Dungan while in the care of Plaintiff.

26. Again, their investigation found no evidence.

27. On or about August 2, 2020, at 2:00 PM, DHS workers Jenny Deckard and Katie Smith came by the daycare to visit with Plaintiff.

28. The following day, at 1:00 PM, DHS workers Jenny Deckard and Percilla Forsithe came by the daycare to visit with Plaintiff.

4

29. After several other unsuccessful attempts to visit on the part of DHS (each occurring on a subsequent day), DHS placed Plaintiff's daycare on the child care locator with the warning notation "Care giver failed to notify of child abuse".

30. Despite their exhaustive investigation, DHS's agents failed to locate a single child that had been harmed in any way and there was never an instance of child abuse that was not reported. Nonetheless, DHS's agents and employees took intentional steps to force Plaintiff out of business.

31. As a result of the actions of DHS and its agents, Plaintiff lost a business that provided her an income stream of $40,000 per year.

32. On September 25, 2020, Plaintiff filed a Tort Claim with the State of Oklahoma in compliance with the Governmental Tort Claims Act. On February 9, 2021, the State issued a letter denying the claim.

## COUNT I - CLAIMS FOR VIOLATION OF
## CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND SUBSTANTIVE DUE PROCESS

33. Plaintiff re-alleges and re-avers the allegations contained in paragraphs 1-32.

34. Plaintiff has a property interest in her business, which she has operated for many years.

35. Each time the DHS workers came to her residence (whether the daycare was open or not), they were acting under color of law as agents of the Department of Human Services.

36. As a result of both 10 O.S. § 403 and OAC 340:110-3-276(b)(2), DHS lacks jurisdiction over a daycare in Indian Country.

37. The actions of the DHS workers summarily determined that Plaintiff would be forced to close her daycare. Plaintiff initially refused.

38. DHS then began a pattern of coming to the residence/daycare in an effort to harass Plaintiff at all hours of the day or night in an effort to "catch" Dungan at the residence.

39. DHS then interviewed each of the parents of the children that were Plaintiff's clients.

40. During each of these interviews, DHS investigators communicated negative and unsubstantiated information about the conditions at Plaintiff's daycare.

41. DHS published Plaintiff's daycare on the child care locator with the warning notation "Care giver failed to notify of child abuse" without any finding or affording the Plaintiff an opportunity to contest the charges, and without producing any evidence.

42. This decision was an arbitrary and capricious action on the part of the State, and was done out of malice as a result of Plaintiff telling the State's agents that she did not believe the allegations made against Dungan were true.

43. As a result of the arbitrary and capricious actions of the State, Plaintiff lost her daycare and the income that was derived therefrom with no due process or opportunity to be heard, in violation of her Fifth and Fourteenth Amendment Rights.

44. The exercise of State power in violation of the clearly established law by denying her due process and exercising State power in Indian Country, which has been plainly established for over 100 years and was pointed out by the United States Supreme Court almost 30 days before DHS took the actions complained of by Plaintiff.

## COUNT II - FAILURE TO TRAIN AND NEGLIGENT RETENTION

45. Plaintiff re-avers and re-alleges the allegations of Paragraphs 1-44.

46. Each of the DHS investigators was working within the scope of their employment at the time of the actions giving rise to this Complaint.

47. Both State law and the Oklahoma Administrative Code clearly show that DHS has no jurisdiction in Indian Country, where this facility is located.

48. Had DHS properly trained their workers, they would not have been at the Plaintiff's daycare.

49. In this case, the employees of DHS acted based upon *what they believed* and not what had been proven or substantiated.

50. The actions of the DHS employees were reckless, arbitrary, and capricious when it is considered that they acted based upon "allegations" and what the individual investigator "believed".

51. The actions of the DHS employees are inconsistent with the written policy of DHS.

52. As a result of the continued employment of untrained or inadequately trained employees who acted in an arbitrary and capricious manner outside of their jurisdiction, the Plaintiff has lost income generated by the business in the amount of approximately $40,000 per year.

## COUNT III - CLAIMS FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53. Plaintiff re-avers and re-alleges the allegations of Paragraphs 1-52.

54. The statements of the DHS agents made when calling the customers of Plaintiff have subjected her to public ridicule and scrutiny.

55. That ridicule and scrutiny has resulted in emotional distress, including shame, anxiety, fear, and embarrassment.

56. The actions of the Defendant's agents were negligent in that they disclosed information concerning investigations that are supposed to be held as confidential to Plaintiff's customers in order to embarrass or manipulate Plaintiff.

57. The actions of the Defendant's agents were intentional in that they were calculated to embarrass and manipulate Plaintiff by compelling her to remove Dungan from her residence and to force her to close her business out of fear.

## COUNT IV - CLAIMS FOR INJUNCTIVE RELIEF

58. Plaintiff re-avers and re-alleges the allegations of Paragraphs 1-57.

59. DHS has erected barriers to Plaintiff being able to re-start her business, not the least of which is the negative reports that are associated with her in their database, negative information that might be displayed on the Department's website, and holds that may be placed on her licensing.

60. Each of these impediments was placed by DHS's agents who were acting with malice in an arbitrary and capricious manner in order to punish Plaintiff for providing Dungan a home.

61. None of these impediments is supported by evidence or even a substantiated finding of an investigation, and Plaintiff has never been given any amount of due process that would permit her to challenge these actions prior to the actions being taken.

62. Plaintiff is asking the Court to grant her injunctive relief ordering DHS to remove any negative report or other negative reference to her from their database and to remove any impediment to her becoming re-licensed as a daycare center.

## **COUNT V - PUNITIVE DAMAGES**

63. Plaintiff re-avers and re-alleges the allegations of Paragraphs 1-62.

64. The actions of the Defendant and its agents and employees are of the kind that should not be tolerated in a civilized society.

65. The arbitrary and capricious use of State power to destroy a citizen's business is the type of behavior that should be punished as an example to others.

66. The failure to train employees not to act outside of their jurisdiction or in a manner that is not supported by facts or evidence is of the type that should be punished as an example to others.

67. The Defendant's reckless disregard for the rights of Plaintiff, specifically the pattern and practice of disregarding the rights to due process or to associate with family, are also of the type that should be punished as an example to this agency and others.

WHEREFORE, the Plaintiff prays for judgment against the Defendants in the compensatory amount in excess of $75,000, punitive damages in excess of $75,000, costs and attorney fees associated with this action and any other relief available in law and equity.

Respectfully Submitted,

\_\_/s/ John M. Dunn_____
John M. Dunn,  OBA# 20975
The Law Offices of John M. Dunn, PLLC
616 South Main Street, Suite 206
Tulsa, OK 74103
Telephone: (918) 526-8000
Facsimile: (918) 359-5050
jmdunn@johndunnlaw.com
Attorney for Plaintiff